**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-02387-WJM-MEH

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

and

TYLER RILEY,

    Intervenor Plaintiff,

v.

WESTERN TRADING COMPANY, INC.,

    Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Plaintiffs Equal Employment Opportunity Commission ("EEOC") and Tyler Riley (together "Plaintiffs") bring this action against Defendant Western Trading Company, Inc. alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq*. (ECF No. 1 at 6-8.) Before the Court is Defendant's Motion for Summary Judgment ("Motion"). (ECF No. 64.) For the reasons set forth below, the Motion is denied.

### I. LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem*

*Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995); *Houston v. Nat'l General Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. FACTUAL BACKGROUND

The relevant facts, viewed in the light most favorable to Plaintiffs, are as follows:

Plaintiff Tyler Riley has suffered from a seizure disorder[1] since the age of 9. He experiences intermittent "complex partial seizures", at least once every two weeks, regardless of whether he takes medication. (ECF No. 77-1 at 3-4.) During a seizure, Riley is typically not fully conscious but he may be able to answer simple questions. (*Id.*) He often turns blue around the mouth, bites his tongue, and may convulse. (*Id.* at 3.) Riley's seizures last from ten seconds to five minutes and are followed by a period

---

[1] The parties use the phrase "seizure disorder" and the term epilepsy interchangeably. The Court will do likewise.

of confusion that typically lasts between thirty and ninety minutes.  (*Id*.)  Riley can usually tell when he will experience a seizure and has not been seriously injured by any of his seizures.  (*Id*. at 3.)  The frequency of Riley's seizures renders him unable to drive.  (ECF No. 77-22 at 7-8.)

Defendant Western Trading is an army surplus store that has two locations in the Denver Metropolitan area.  (ECF No. 77-25 at 5-7.)  Riley began working as a sales associate at Western Trading on May 2, 2008.  (ECF No. 64-4 at 4.)  As a sales associate, Riley was required to tag, price, stock, and move merchandise, perform general housekeeping, and assist customers.  (ECF No. 64-5 at 2-4.)  This work often involve the use of an extension ladder as high as 20-25 feet in the air.  (*Id*.)

During his scheduled shift on May 3, 2008, Riley suffered a seizure.  (ECF No. 64-4 at 4.)  Chris Moore, Riley's supervisor, witnessed the seizure and sent Riley home for the rest of the day.  (ECF No. 77-6.)  Riley was scheduled to work the following day but Moore instructed him to not come back until May 5, 2008.  (ECF No. 64-7 at 4-5.)  Riley was disoriented following the seizure and up until the time he left for home.  (*Id*.)  At that time, Riley did not tell anyone that he suffers from epilepsy.  (*Id*. at 3-4.)

On May 5, 2008, Riley reported for work as requested by Moore.  (*Id*. at 5.)  Riley informed Moore that he had experienced a seizure on May 3, 2008 which caused his erratic behavior .  (ECF No. 77-27 at 13-14.)  Riley told Moore that he had been to the hospital and Moore asked Riley to provide medical documentation.  (*Id*.)  A three-page medical report from Swedish Medical Center ("Swedish") was faxed over less than an hour later.  (*Id*.; ECF No. 77-25 at 21.)  Moore reviewed this report with Steven Finer,

Defendant's President and an owner of the company. (ECF No. 77-25 at 3; 23.) Finer decided that he wanted more information about Riley's medical condition before he would permit Riley to resume work. (*Id.* at 23.) Moore sent Riley home and told him that he would not be permitted to work until he provided additional medical information. (ECF No. 77-27 at 17.)

On May 8, 2008, Defendant received a medical release from Swedish that cleared Riley for work with no restrictions. (ECF No. 77-8.) Moore called Riley and told him that he needed to provide documentation that specifically addressed ladders. (ECF No. 77-25 at 26.) Within two hours, Defendant received another medical release from Swedish stating that Riley had no ladder restrictions and was allowed to climb as high as 20-25 feet. (ECF No. 77-9.) However, this was not sufficient information for Defendant. (ECF No. 77-25 at 27.) Moore again called Riley and asked for more information generally about his medical condition. (ECF No. 77-27 at 22.)

An hour later, Defendant received a fax from Stephanie Beltz, a nurse practitioner who was Riley's primary care provider. (ECF No. 77-10.) Beltz informed Defendant that Riley was cleared for work with no restrictions and offered to be contacted by phone if additional information was necessary. (*Id.*) Finer decided that Riley could still not return to work. (ECF No. 77-25 at 30.) Moore contacted Riley with this news and posed a number of questions to Riley that he needed to have answered. (ECF No. 77-27 at 26.) No one attempted to contact Ms. Beltz at this time. (ECF No. 77-25 at 34.)

On May 14, 2008, Ms. Beltz sent Defendant another letter answering the questions that Moore had posed to Riley. (ECF No. 77-12.) Ms. Beltz generally

-4-

explained Riley's seizure disorder, explained his current medication and that there were no side effects, and informed Defendant that the only care they needed to provide for Riley during a seizure was to have someone sit with him when he "comes out" so that he knows where he is. (*Id.*)  Ms. Beltz's letter also stated that Riley's only restriction was that he was not allowed to drive, otherwise he could perform all duties of his job. (*Id.*)  Moore thought this letter was sufficient to allow Riley to return to work. (ECF No. 77-27 at 28.)  However, Finer believed that still more information was required. (ECF No. 77-25 at 33.)

Finer instructed Tiffany East, an assistant manager, to call Ms. Beltz. (*Id.*)  East spoke with Ms. Beltz on May 14, 2008 and asked Ms. Beltz how frequently Riley should be expected to have seizures. (ECF No. 77-23 at 5.)  Ms. Beltz was unable to assure East that Riley would not suffer any additional seizures but stated that they should decrease in frequency if he takes his medication as prescribed. (*Id.*)  East informed Finer that Riley should not experience any more seizures if he took his medication as prescribed. (ECF No. 64-8 at 6.)  Finer decided that he now had sufficient information to permit Riley to return to work. (ECF No. 77-25 at 49.)

Riley returned to work on May 15, 2008. (ECF No. 77-27 at 18.)  On May 24, 2008, Riley called in sick and informed East that he had experienced a seizure and been taken to the hospital the day before. (ECF No. 77-23 at 7.)  East spoke with Finer about Riley's absence and drafted a set of three questions for Riley to provide to Ms. Beltz about Riley's medical condition: (1) why was Riley still having seizures even though medicated; (2) is it okay to be on extension ladders 12 to 14 feet high; and (3) what is the next step to ensure that Riley remains safe, including a possible change in

his medication. (ECF No. 77-13.)

On May 25, 2008, Riley returned to work with a doctor's note for his prior absence. (ECF No. 77-14.) Riley informed East that, regardless of his medication, he would always have seizures. (ECF No. 77-23 at 15.) East gave Riley the three questions that she had drafted and Finer had approved. (*Id*. at 17.)

On May 29, 2008, Riley had not provided any additional medical information and, upon reporting for work, Moore told Riley to leave and get off the property. (ECF No. 77-28 at 8.) Moore informed Riley that he could not return to work until Defendant had the chance to review his paperwork. (*Id*. at 13-14.)

On June 3, 2008, Riley obtained another note from Ms. Beltz. (ECF No. 77-15.) It stated that Riley's medication had been increased in hopes of preventing another seizure. (*Id*.) Riley provided this note to Finer. (ECF No. 77-25 at 41.) Finer admits that Ms. Beltz's June 3, 2008 note answered the third question posed to Riley by East. (*Id*. at 44-45.) Riley had already provided the information that answered the first two questions. (ECF No. 77-27 at 29-30.)

Despite providing this information, Riley was not permitted to return to work. On June 5, 2008, Finer wrote a letter to Riley stating that Beltz's June 3, 2008 letter did "not come close to answering the specific questions that were asked about the effects of your condition on your ability to safely work." (ECF No. 64-3 at 8.) Finer stated that Defendant would "hold [Riley's] position . . . until such time as your doctor can provide us with specific assurances that you can safely perform your job." (*Id*.) No one from Western Trading attempted to contact Riley after this letter. (ECF No. 77-25 at 42-43.) Riley's last day of work for Defendant was May 29, 2008. (ECF No. 77-28 at 8.)

### III.  ANALYSIS

On these facts, Plaintiffs bring three claims under the ADA: (1) disability discrimination; (2) failure to accommodate; and (3) unlawful co-mingling of personnel and medical records.  (Compl. at 6-8.)  Defendant moves for summary judgment on all claims.  (Mot. at 1.)  The Court will address each claim in turn below.

**A.   Disability Discrimination / Disparate Treatment**

The ADA prevents employers from discriminating "against a qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  To establish a *prima facie* case of discrimination under the ADA, the plaintiff must show: (1) he is a "disabled" person under the ADA; (2) he is qualified to perform the essential functions of the job in question; and (3) he was discriminated against because of his disability.  *Mauerhan v. Wagner Corp.*, 649 F.3d 1180, 1185 (10th Cir. 2011).  To defeat Defendant's Motion, Plaintiffs must show that there is a genuine dispute of material fact on each element of this *prima facie* case.  *MacKenzie v. Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005).

    1.   <u>Whether Riley is a "disabled" person</u>

The first element of a discrimination claim under the ADA is proof that the plaintiff has a qualifying "disability" under the statute.  The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C.A. § 12102(2).

Defendant contends that Riley was not disabled because his seizure disorder did not substantially limit one or more major life activities.  (Mot. at 16-17.)  The term "major

life activities" is not defined in the statute, but courts typically look to federal regulations which define it as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Kellogg v. Energy Safetcy Servs., Inc.*, 544 F.3d 1121, 1125 (10th Cir. 2008) (citing 29 C.F.R. § 1630.2(I)). "Substantially limits" is defined as "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1).

Plaintiffs contend that there is a genuine dispute of fact as to whether Riley's seizure disorder substantially limits one or more of his major life activities. (Opp. at 21-23.) The Court agrees. As Plaintiffs point out, the Tenth Circuit has held that "ascertaining whether the impairment substantially limits the major life activity is a factual question for the jury." *Doebele v. Sprint/United Management Co.*, 342 F.3d 1117, 1129 (10th Cir. 2003). Other courts dealing with cases of epilepsy far less severe than that present here have held that summary judgment on this issue is not appropriate. *See, e.g., Matczak v. Frankford Candy and Chocolate Co.*, 136 F.3d 933, 937-38 (3d Cir. 1997) (question of fact for jury resolution when plaintiff had suffered only one seizure in last thirty years); *EEOC v. Rite Aid Corp.*, 750 F.Supp.2d 564, 569-70 (D. Md. 2010) (plaintiff had suffered eight seizures in two years).

"[W]hether a person has a disability under the ADA is an individualized inquiry." *Sutton v. United Airlines*, 527 U.S. 471, 483 (1999). The Court finds that Plaintiffs have

presented sufficient evidence regarding the severity of Riley's seizure disorder and the manner in which it affects his life so as to warrant the jury determining whether it substantially limits one or more of his major life activities. As such, Plaintiffs have shown a genuine dispute of fact as to the first prong of their disability discrimination claim.

2.   Qualified to perform the essential functions of the position

Defendant contends that Plaintiffs cannot show that Riley was qualified to perform his job because he was receiving Social Security Disability Insurance ("SSDI") benefits during his employment. (Mot. at 18-19.) Defendant argues that Plaintiffs' "assertions that Riley is a qualified person with a disability under the ADA are inconsistent with Riley's status as a disabled person under the Social Security Act." (*Id*.)

In support of this argument, Defendant relies on *Cleveland v. Policy Management Systems Corporation*, 526 U.S. 795 (1999) in which the lower courts held that the receipt of SSDI benefits created a rebuttable presumption that the plaintiff was judicially estopped from asserting that he was disabled under the ADA. *Id*. at 799. The Supreme Court reversed and held that "the two claims do not inherently conflict to the point where courts should apply a special negative presumption like the one applied by the Court of Appeals here." *Id*. at 802. The Supreme Court pointed out that the SSDI process does not take into account an individual's ability to work with reasonable accommodation, which is a crucial element in the ADA. *Id*. at 803. The Supreme Court also noted that the ADA process is individualized and particularized to a specific job

and its duties while the SSDI process is generalized. *Id*. Finally, the Supreme Court noted that an individual's health condition may change such that they qualified for SSDI benefits at one point but were later able to perform all of the essential functions of a particular job. *Id*. at 805.

Ultimately, the Supreme Court concluded that an ADA plaintiff who is receiving or has received SSDI benefits must proffer an explanation as to why his ADA claim is not incompatible with the receipt of SSDI benefits. *Cleveland*, 526 U.S. at 806. Here, Plaintiffs have offered such an explanation.

Plaintiffs point out that Defendants have failed to show that Riley made any affirmative representation regarding his ability to work during his SSDI process because Riley was found disabled by the Social Security Administration at step three of the five-step process due to his seizure disorder being a listed impairment. *See* 20 C.F.R. § 404.1520(a) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled."); SSA List of Impairments § 11.00 (including epilepsy in list of impairments). The findings regarding the ability to work come in steps four and five of the process. *Id*. Thus, there is no evidence in the record that Riley made an affirmative statement regarding his ability to work which must be distinguished in this case.

Additionally, as noted by the Supreme Court in *Cleveland*, the Social Security Administration's determination of Riley's ability to work did not consider whether reasonable accommodations would permit him to perform the essential duties of a job. Plaintiffs have presented evidence that many employers have been able to

accommodate workers with epilepsy. (ECF No. 77-1 at 5-6.) This is an additional explanation as to why Riley's receipt of SSDI benefits is not incompatible with his contention that he is able to perform all of the essential functions of Defendant's sales associate position.

Aside from the argument discussed above, Defendant does not contend that Riley was unable to perform any particular job duty of the sales associate position. Accordingly, the Court finds that Plaintiffs have met their *prima facie* burden with respect to the second prong of their disability discrimination claim.

        3.      <u>Whether Riley was Discriminated Against Because of his Epilepsy</u>

When the alleged discrimination relates to employment status, a plaintiff can satisfy the third prong of his *prima facie* test by showing that the employer terminated or took adverse action against the employee under circumstances which give rise to an inference that the termination was based on his disability. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

Defendant contends that Plaintiff cannot show that he suffered an adverse employment action. (Mot. at 25-26.) The Tenth Circuit liberally defines the phrase "adverse employment action." *See Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1264 (10th Cir. 1998). The Supreme Court has held that an adverse employment action is anything that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

The evidence shows that Riley was twice told to leave work and not return until he provided additional medical documentation. (ECF No. 77-28 at 14.) The Court fails to see how this is any different from being placed on an unpaid leave or suspension. Riley had previously informed Defendant that, regardless of his medication, he would continue to have seizures. (ECF No. 77-23 at 15.) Despite this notification, Defendant informed Riley that he would not be permitted to return to work "until such time as your doctor can provide us with specific assurances that you can safely perform your job." (ECF No. 77-16.)

The Court finds that this evidence creates a genuine dispute of fact as to whether Riley suffered an adverse employment action. Moreover, there is sufficient evidence to allow a reasonable juror to conclude that this adverse employment action was based on Riley's disability. As such, the Court finds that Plaintiffs have met their burden with respect to the third prong of the *prima facie* test.

The only basis upon which Defendant seeks summary judgment on the disability discrimination claim is that Plaintiffs have not satisfied their *prima facie* burden with respect to that claim. Because Plaintiffs have shown a genuine dispute of fact as to all elements of the *prima facie* test, Defendant's Motion for Summary Judgment is DENIED as to Plaintiffs' disability discrimination claim.

**B.     Failure to Accommodate**

The ADA requires an employer to make an effort to accommodate an employee's disability. *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1265 (10th Cir. 2010); 42 U.S.C. § 12112(b)(5)(A). Federal regulations implementing the ADA require

both the employer and employee to engage in an "interactive process" in order to determine if a reasonable accommodation or reassignment can accommodate the disabled employee. *Id.* Defendant's only argument with respect to the failure to accommodate claim is that Riley abandoned the interactive process. (Mot. at 21-24.)

"The federal regulations implementing the ADA 'envision an interactive process that requires participation by both parties.'" *Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619 (10th Cir. 1998) (quoting *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)). Both parties must participate in good faith and must "proceed in a reasonably interactive manner to determine whether the employee would be qualified, with or without reasonable accommodations, for another job within the company and, if so, to identify an appropriate reassignment opportunity if any is reasonably available." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1175 (10th Cir. 1999).

Defendant argues that Riley abandoned the interactive process by failing to provide medical information that it requested of him. (Mot. at 23.) The Court agrees that a reasonable juror could find that Riley caused the breakdown of the interactive process. Equally true, however, is the fact that a reasonable juror could find that Defendant failed to engage in a good faith interactive process. Defendant continually asked for more information or asked for the same information multiple times. Riley responded promptly to all requests for additional medical information, provided seven different documents regarding this medical condition, and gave Defendant the contact information for his primary care provider. (ECF Nos. 77-7--77-10; 77-12; 77-14; 77-15; 77-27 at 21.) A reasonable juror could conclude that Defendant's conduct through the

interactive process was not undertaken in good faith. *See Decree v. United Parcel Servs., Inc.*, 2009 WL 3055382, *11 (D.N.J. Sept. 18, 2009) (employee's responsiveness in providing medical information created question of fact as to whether he caused the breakdown of the interactive process).

Additionally, at some point during the interactive process, Riley suggested that he could be transferred to a cashier position so that he would not have to be involved with climbing ladders. (ECF No. 77-28 at 15.) Defendant never responded to Riley's request to transfer to a cashier position. Defendant also failed to consider whether Riley might be able to continue serving as a sales associate but with the accommodation of not having to climb ladders. (ECF No. 77-25 at 12.) A reasonable juror could conclude that Defendant's actions in this respect were not in good faith. *See Smith*, 180 F.3d at 1174 (failure to consider employee for other vacant positions is evidence of bad faith); *Gomez v. Con-way Central Exp., Inc.*, 2009 WL 799243, *10 (D.N.J. March 24, 2009) (failure to timely consider request to transfer created dispute of fact as to good faith).

Whether both parties acted in good faith with respect to their obligation to engage in the interactive process is typically a question of fact for the jury. *See Hines v. Chrysler Corp.*, 231 F.Supp.2d 1027, 1051 (D. Colo. 2002); *EEOC v. Convergys Customer Management Group*, 491 F.3d 790, 797 (8th Cir. 2007); *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1116 (9th Cir. 2000) ("summary judgment is available only where there is no genuine dispute that the employer engaged in the interactive process in good faith."); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 318 (3d Cir. 1999) ("where

there is a genuine dispute about whether the employer acted in good faith, summary judgment will typically be precluded."). Given the factual disputes regarding both parties' actions with respect to the interactive process, the Court finds that this issue is appropriate for resolution by the jury. Accordingly, Defendant's Motion for Summary Judgment is denied as to Plaintiff's failure to accommodate claim.

## C. Co-mingling of Records

The ADA provides that medical information collected by an employer must be kept in "separate medical files and . . . treated as a confidential medical record." 42 U.S.C. § 12112(c)(3)(B). Defendant contends that there is no evidence that it violated this provision. In response, Plaintiffs point a statement made by Steven Finer, an owner and president of Defendant Western Trading, that all employee records, whether medical or not, were kept together.[2] (ECF No. 77-19.) There is also evidence that, when Defendant provided records to the EEOC, Riley's medical records were mixed together with non-medical personnel records. (*Id*.) This evidence creates a genuine dispute of fact as to whether Defendant kept Riley's medical records separately and confidentially.

Because Plaintiff has produced evidence showing a dispute of fact as to whether Riley's medical records were co-mingled with his personnel records, Defendant's Motion for Summary Judgment is denied with respect to Plaintiff's claim pursuant to 42 U.S.C. § 12112.

---

[2] Defendant contends that Finer's statement is hearsay and, therefore, the Court cannot consider it on summary judgment. However, because Finer is Defendant's president and an owner of the company, his statements are that of a party-opponent and are not hearsay. Fed. R. Evid. 801(d)(2).

## IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (ECF No. 64) is DENIED in its enttirety.

Dated this 27th day of April, 2012.

BY THE COURT:

_____
William J. Martinez
United States District Judge