**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

CIVIL ACTION NO. 2010-CV-02387-WJM-MJW

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

    Plaintiff,

TYLER RILEY

    Plaintiff-Intervener

v.

WESTERN TRADING COMPANY, INC.

    Defendant

---

**PLAINTIFF EEOC'S MOTION FOR EQUITABLE RELIEF**

---

Plaintiff Equal Employment Opportunity Commission ("EEOC") hereby requests, pursuant to Fed.R.Civ.P. 54(a) and (c) and Fed.R.Civ.P. 58(a) and (b)(2)(B), that this Court enter judgment against Defendant Western Trading Company, Inc. ("Western Trading"), including the following forms of equitable relief:

1) Prejudgment interest on the backpay damages award, and
2) Injunctive relief, including an order that
   a. Western Trading is permanently enjoined from discriminating against employees or applicants because of disability or the need to make reasonable accommodations for a person with a disability.

    b. Western Trading engage in regular training of its employees on their rights and obligations under the ADA,

    c. Western Trading revise and redistribute its policies to include provisions addressing disability discrimination and a procedure for employees to seek reasonable accommodation.

    d. Western Trading post a notice regarding the judgment in this case at all Western Trading locations, and

    e. Western Trading maintain all records relating to compliance with the Court's order and report on compliance to the EEOC.

The specifics of the requested equitable relief are discussed more fully below and in the exhibits attached hereto. EEOC conferred with Defense Counsel regarding this motion, which Defendant opposes.

## BACKGROUND

EEOC instituted this lawsuit in September 2010, alleging that Western Trading discriminated against Tyler Riley, who has epilepsy, by terminating his employment, failing to make reasonable accommodations for his disability, and comingling his medical records. *See* Compl. (Doc. 1). Among the relief sought by EEOC was "a permanent injunction enjoining Defendant . . . from discriminating against employees or applicants because of disability." *Id.* at 8. EEOC also sought an order that "Defendant institute and carry out policies, practices, and programs which provide equal employment opportunity for qualified individuals with disabilities," and EEOC sought an award of "back pay and benefits with prejudgment interest." *Id.*

The Court held a 4-day jury trial beginning on May 4, 2013. *See* Courtroom Minutes (Docs. 145-148). At the conclusion of the trial the jury found for the Plaintiffs on their claim of disparate treatment, awarding $20,000 in compensatory damages, $24,000 in back pay, and $65,000 in punitive damages. *See* Verdict Form (Doc. 148-7).

Among the evidence presented at trial was the testimony of Chris Moore, Tiffany East, and Steven Finer. All three confirmed that equal employment opportunity training, including ADA training, was presented only to managers and only on an *ad hoc*, case-by-case basis. What little training occurred was conducted by Mr. Finer who was the decision-maker in this case. Mr. Finer, who is the president and legal counsel for Western Trading, testified that he would not change the way that he dealt with Mr. Riley, that he believed everything he did was proper and within the confines of the ADA. Mr. Finer, however, either knew or should have known that his treatment of Mr. Riley violated the ADA, as evidenced by the jury's punitive damages award.

## ARGUMENT

The Americans with Disabilities Act incorporates the enforcement provisions of Title VII of the Civil Rights Act. 42 U.S.C. § 12117(a). Title VII in turn provides:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include . . . back pay, or any other equitable relief as the court deems appropriate.

42 U.S.C. § 2000e-5(g)(1). "Congress' decision to incorporate in the ADA the remedies and procedures of Title VII is a clear indication . . . that the statutory requirement for injunctive relief should be applied in harmony in cases under the two acts." *Roe v Cheyenee Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1230 (10th Cir. 1997). In determining whether an act

was intentional, "[i]t is enough to show that the practice was followed deliberately, not accidentally." *Id*. (citations omitted). Once it is shown that an act was intentional, "[t]he court's discretion is to be exercised in light of the purposes of the statue on which plaintiff's suit is based" *Id*. (citations omitted).

>The stated purposes of the ADA are:
>
>(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and
>(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b).

Here, there can be no doubt based on the jury's verdict, that Western Trading's discriminatory treatment of Mr. Riley was intentional. *See* Verdict (Doc. 148-7). Consequently, the Court should award both prejudgment interests and injunctive relief.

### A. *An award of prejudgment interest is justified and would serve the purposes of the ADA.*

"[P]rejudgment interest is an element of complete compensation in back pay awards." *Reed v. Mineta*, 438 F.3d 1063, 1066 (10th Cir. 2006)(quoting *Loeffler v Frank*, 486 U.S. 549, 558 (1988)). It is meant to "make victims of discrimination whole and compensate[] them for the true cost of money damages they incurred." *Id*. (citations omitted). "Calculation of the rate for prejudgment interest . . . 'rests firmly within the sound discretion of the trial court.'" *Weber v. GE Group Life Ins. Co.*, 541 F.3d 1002, 1016 (10th Cir. 2008)(quoting *Caldwell v. Life Ins. Co. of N. Am.*, 287 F. 3d 1276, 1287 ( 10th Cir. 2002)). "Courts commonly look to state statutory

prejudgment interest provisions as guidelines for a reasonable rate." *Id*. (citing *Allison v. Bank One*, 289 F.3d 1223, 1244 (10th Cir. 2002). Thus, in *Weber* the Tenth Circuit upheld an award of 15% interest based on an Oklahoma statute. *Id*. at 1017. Likewise, in *Allison* the Tenth Circuit upheld an award of 8% interest based on Colorado law. *Allison*, 289 F.3d at 1244.

Whatever the interest rate used, however, the Court must determine the interest on the damages as they accrue, rather than as a single lump sum. *Reed*, 438 F.3d at 1067. One method used for calculating interest, which has been expressly approved of by the Tenth Circuit, is to use a computerized spreadsheet to determine the future value of payments based on the value of the lost payment, the interest rate per period, and the number of compounding periods. *Id*. at 1067 n.4. The court expressed the equation for interest payments as follows:

$\Sigma \ Pmt_1[(1+i)^n-1] + Pmt_2[(1+i)^{n-1}-1] + Pmt_3[(1+i)^{n-2}-1] + \ldots$

Pmt = Amount [claimant] would have been paid
i = Interest Rate Per Period
n = Number of Compounding Periods

*Id*. This formula accounts for interest only. To determine the value of the lost payment, plus interest on that lost payment, the equation would simply be: $Pmt_1[(1+i)^n]$.

Here, the parties have already stipulated to the amount of backpay damages ($46,422) during the relevant backpay period. *See* Stipulation (Doc. 128). The spreadsheet that led to the parties' stipulation and which details compensation and benefits on a monthly basis is attached as Exhibit 1. Defendant conditioned this stipulation on its right to assert a failure-to-mitigate defense. Stipulation (Doc. 128). The question of whether Defendant produced sufficient evidence on this defense, and thus whether Mr. Riley is entitled to the full backpay award, is subject to EEOC's pending motion for judgment as a matter of law (Doc. 152). Assuming *arguendo* that

EEOC prevails on that motion, EEOC proffers a spreadsheet (Ex. 2) which takes into account prejudgment interest at 8% annually, which is the rate of prejudgment interest prescribed by Colorado statute, COLO.REV.STAT. § 5-12-102. This interest rate would serve to make Mr. Riley whole and was approved of by the Tenth Circuit in *Allison,* 289 F.3d at 1244. Using the mathematical formula discussed above, the total loss to Mr. Riley, including the prejudgment interest amount, is $62,092, rounded to the nearest dollar. Consequently, the interest alone is $15,670.

In the event that EEOC does not prevail on its motion for judgment as a matter of law, EEOC tenders a separate spreadsheet (Ex. 3) based on the jury's backpay award of $24,000.[1] Again, EEOC assumes 8% compounded annually, a method approved of by the Tenth Circuit in *Allison*. 289 F.3d at 1244. The interest on $24,000 is $9,280, rounded to the nearest dollar. Thus, the total with interest is $33,280.

### B. *The requested injunctive relief is justified and would serve the purposes of the ADA.*

The court's discretion to award injunctive relief is "necessarily broad," but must include consideration of whether "there exists some cognizable danger of recurrent violation." *Roe v Cheyenee Mountain Conference Resort, Inc*., 124 F.3d 1221, 1230 (10th Cir. 1997)(citations omitted). Here, there should be little doubt that there is a cognizable danger of a recurrent violation, especially given Defendant's lack of ADA training for employees, including managers, and its steadfast belief that it behaved appropriately when it refused to allow Mr. Riley to work,

---

[1] As the spreadsheet indicates, to arrive at a backpay figure of $24,000 the jury would have had to cut off Mr. Riley's backpay part way through June 2009, approximately two months prior to the time when Mr. Riley actually worked the temporary job at Coors Field which served as the basis for Defendant's failure-to-mitigate defense. This diversion from the facts submitted at trial is further indication that the jury had no basis for its backpay figure and that judgment as a matter of law is appropriate on Defendant's failure-to-mitigate defense.

while insisting on impossible medical assurances. Thus, this Court has broad discretion to fashion injunctive relief that will serve the purposes of the ADA.

EEOC respectfully requests that this Court enter the Proposed Order Regarding Injunctive Relief, attached as Exhibit 4. This order includes provisions which (a) permanently enjoin Defendant from engaging in discrimination based on disability or the need to make reasonable accommodation, (b) order that Defendant regularly train its employees on the ADA, (c) order Defendant to adopt more effective non-discrimination policies and procedures for employees to seek reasonable accommodation, (d) order Defendant to post a notice regarding ADA law and the relief granted in this case, and (e) and a requirement that Western Trading maintain records and report on its compliance with this Court's orders. With the exception of the permanent injunction against discrimination based on disability, EEOC has limited the time frame for its proposed injunctive relief to five years which is a reasonable amount of time to ensure against further violations of the ADA.

### 1. Order enjoining Defendant from further discrimination

Given the jury's assessment of punitive damages and Steven Finer's own insistence that he properly handled the situation with Mr. Riley, and would act the same way if confronted with similar circumstances in the future, this Court should enter a permanent injunction prohibiting Defendant from engaging in further discrimination against persons with disabilities who may or may not require reasonable accommodation. Such an injunction will impress upon Western Trading the importance of following the law.

### 2. Order requiring training for all employees

Training one's employees is another way of preventing discrimination or at least teaching employees and managers how to report and respond to discrimination. Given the evidence at trial that Defendant's training on equal employment opportunity matters, including ADA training, was either non-existent or entirely reactive instead of proactive, training is all the more important as a form of injunctive relief in this case. Training should be provided to all new employees and to all employees on at least an annual basis, and should include training on an established procedure for requesting reasonable accommodation. Additional training should be provided to managers and other persons involved in HR decisions because these people are on the front lines of preventing and properly responding to discrimination and to requests for accommodation. Additionally, to ensure training is accurate and adequate, an outside trainer with experience in employment discrimination law should be required.

### 3. Order requiring revisions of policies

A review of the Defendant's employee handbook, which was admitted as Trial Exhibit D, indicates that Western Trading does not maintain any policies directed specifically at the ADA. Indeed, there is absolutely no reference to the ADA in the entire handbook and only two references to people with "handicaps." In order to prevent further violations of the ADA, Defendant should be required to review and update its policies with an outside consultant who has expertise in employment discrimination. At minimum, Defendant's policies should expressly prohibit discrimination based on disability and retaliation, describe that there are consequences to discrimination and retaliation, provide meaningful avenues for reporting discrimination, describe the process employees should use to request reasonable accommodation, and assure that

the company will engage in the interactive process in good faith. These updated policies should be redistributed to all employees.

### 4. Order requiring notice posting

As with the requirements for training and policy revision, the purpose of a notice posting is to let employees at Western Trading know that disability discrimination will not be tolerated, that they have the right to request reasonable accommodation, and to inform them of available avenues to complain about any perceived disability discrimination, including contact information for the EEOC and Colorado Civil Rights Division.

### 5. Order requiring reporting and compliance review

Without provisions requiring reporting and oversight, the power of all other provisions are diminished. Defendant needs to know that compliance will be monitored. The easiest way to ensure compliance is for Defendant to report to EEOC about its implementation of the Court's Order and to allow EEOC to interview employees if the need arises. To the extent EEOC believes that Defendant is not complying with the Court's Orders, it should have to provide Defendant with notice and an opportunity to resolve non-compliance before involving the Court. Accordingly, in addition to requirements that Defendant submit semi-annual reports to the EEOC and allow EEOC interviews of employees, EEOC has included in its proposed order a process for resolving disputes before seeking relief from the court.

## CONCLUSION

The jury in this case determined that Western Trading intentionally discriminated against Tyler Riley because of his disability or because of the need to accommodate his disability, awarding more than the statutory damages cap in punitive damages. Consequently, Mr. Riley is

entitled to make-whole relief, including prejudgment interest on backpay. Further, because of the extreme dearth of ADA training and the expressed belief of Western Trading that it treated Mr. Riley appropriately, there is a cognizable danger of recurrent violations, and this Court should award injunctive relief designed to prevent future violations of the ADA.

Dated: March 22, 2013

                    Respectfully submitted,

                    */s/ Sean Ratliff*
                    SEAN RATLIFF
                    Trial Attorney
                    (303)-866-1370

                    Rita Byrnes Kittle
                    Supervisory Trial Attorney

                    EQUAL EMPLOYMENT
                    OPPORTUNITY COMMISSION
                    Denver Field Office
                    303 E. 17th Ave., Suite 410
                    Denver, CO 80203

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2013, I electronically filed the foregoing motion with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Gary J. Benson
gbenson@dnvrlaw.com

Jim Abrams
abramsjim@gmail.com

>                             */s/ Sean Ratliff*
>                             Sean Ratliff