**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-02387-WJM-MJW

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

      Plaintiff,

and

TYLER RILEY,

      Plaintiff-Intervenor,

v.

WESTERN TRADING COMPANY, INC.,

      Defendant.

---

## ORDER ON POST-TRIAL MOTIONS

---

After a four-day trial, the jury returned a verdict in favor of Plaintiffs Equal

Employment Opportunity Commission and Tyler Riley (together "Plaintiffs") on his claim

for disparate treatment and in favor of Defendant Western Trading Company, Inc.

("Defendant") on the claims of failure to accommodate and failure to maintain separate

medical records.  (ECF No. 148-7.)  The jury awarded Plaintiffs damages in the

following amounts: $20,000 for compensatory damages, $24,000 for backpay, and

$65,000 for punitive damages.  (*Id.*)

Before the Court are the following post-trial motions: (1) Plaintiff EEOC's Motion

Pursuant to Federal Rule of Civil Procedure 50(b) for Judgment as a Matter of Law on

Defendant's Failure-to-Mitigate Defense (ECF No. 152); (2) Defendant's Unopposed

Motion to Reduce Jury Verdict in Accordance with Statutory Damages Cap (ECF No. 153); and (3) Plaintiff EEOC's Motion for Equitable Relief (ECF No. 154).  The Court will discuss each motion in turn below.

## I.  DEFENDANT'S UNOPPOSED MOTION TO REDUCE JURY VERDICT

42 U.S.C. § 1981a(b)(3) sets a damages cap for the combination of compensatory and punitive damages.  For an employer with between 14 and 101 employees, like Defendant, the cap is set at $50,000.  *See* 42 U.S.C. § 1981a(b)(3).  The jury awarded Plaintiffs $20,000 for compensatory damages and $65,000 for punitive damages.  (ECF No. 148-7.)  As this exceeds the statutory cap, the Court must reduce the verdict.  *See Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1273 (10th Cir. 2000) ("[I]f the damages awarded exceed the relevant limit, the district court shall reduce the amount so that it conforms to the statutory cap.")

Accordingly, Defendant's Unopposed Motion to Reduce Jury Verdict (ECF No. 153) is GRANTED.  The jury's award of compensatory and punitive damages is REDUCED from $85,000 to $50,000 in accordance with 42 U.S.C. § 1981a(b)(3).

## II.  PLAINTIFF EEOC'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON FAILURE TO MITIGATE

Prior to trial, the parties stipulated that Tyler Riley's backpay for the relevant time period was $47,060.  (ECF No. 128.)  In this stipulation, Defendant reserved the right to present evidence on failure to mitigate these backpay damages.  (*Id.*)  At trial, Mr. Riley testified about his efforts to obtain employment after his termination, including his voluntary resignation from a temporary job that he obtained.  During the conference on jury instructions, after all of the evidence had been presented at trial, the EEOC

objected to the Court's proposed instruction on mitigation of damages, arguing that

Defendant had not presented sufficient evidence to warrant this instruction. The Court

overruled the objection, finding that Defendant had presented a scintilla of evidence of

mitigation by eliciting the testimony about Mr. Riley voluntarily quitting his temporary

job.

The jury was then given the following instructions on backpay and mitigation of

damages:

### DAMAGES — BACKPAY

If you determine Defendant discriminated against Tyler Riley in suspending or terminating him, as alleged in the Disparate Treatment claim, then you must determine the amount of damages that Defendant's actions have caused Mr. Riley.

One form of damages which may be awarded is backpay. Backpay is the amount of wages and benefits the person would have earned if he had not been discriminated against and remained employed, minus what he actually earned from other jobs during the backpay period. In this case, the Plaintiffs are seeking backpay only for the period from May 2008 through May 2010. While Western Trading denies that it discriminated against Mr. Riley, the Parties agree that the amount Mr. Riley would have earned had he continued working for the Defendant through May 2010, would be $47,060, and that the amount he actually earned during that time period was $638.

### MITIGATION OF DAMAGES

Tyler Riley is required to make reasonable efforts to minimize his backpay damages by seeking comparable employment. In this case, Western Trading claims that Mr. Riley failed to use reasonable efforts to find employment and voluntarily resigned from comparable employment after his termination.

It is Western Trading's burden to prove that Mr. Riley failed to make reasonable efforts to minimize his damages. To establish this affirmative defense, Western Trading must prove by a preponderance of the evidence that during the

time period May 2008 through May 2010:

1.     There were substantially comparable positions which Tyler Riley could have discovered and for which Tyler Riley was qualified; and

2.     Tyler Riley failed to use reasonable diligence to find suitable employment. "Reasonable diligence" does not require that Mr. Riley be successful in obtaining employment, but only that he make a good faith effort at seeking employment.

     If Western Trading has proven both of these elements, then you should not include whatever amount Mr. Riley could have earned with reasonable effort (over and above the $638 he actually earned between May 2008 and May 2010) in your backpay damages award, if any, on the Disparate Treatment or Failure to Accommodate claim.

(ECF No. 148-8 at 45.)  After finding in Plaintiffs' favor on the disparate treatment claim, the jury awarded Plaintiffs $24,000 in backpay.

Plaintiff EEOC now moves for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) ("Motion").  Before turning to the merits of the Motion, the Court must address a procedural issue.  During trial, Plaintiffs did not make a motion for judgment as a matter of law pursuant to Rule 50(a).  A pre-verdict Rule 50(a) motion is generally a prerequisite to a post-verdict motion filed under Rule 50(b).  *Dawson v. Johnson*, 266 F. App'x 713, 718 (10th Cir. 2008).  However, Rule 50(b) is construed liberally, *Anderson v. United Telephone Co. of Kansas*, 933 F.2d 1500, 1503 (10th Cir. 1991), and the Court "may excuse technical non-compliance when the purposes of the rule are satisfied."[1]  *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 610 (5th Cir. 1996); *see also Smith v. University of North Carolina*, 632 F.2d 316,

---

[1]  The Court notes that, in opposing the instant Rule 50(b) motion, Defendant does not raise the waiver issue.  (ECF No. 155.)  However, given the case law on waiver, the Court finds it necessary to address the issue.

339 (4th Cir. 1980) (requiring substantial compliance with the purposes of Rule 50); *Bayamon Thom McAn, Inc. v. Miranda*, 409 F.2d 968, 971 (1st Cir. 1969) (same).

The Court finds that Plaintiffs preserved the right to bring the instant Motion by arguing at the jury charge conference that Defendant had not presented sufficient evidence to warrant the mitigation of damages instruction.  While not raised as a Rule 50(a) motion, Plaintiffs' objection to the jury instruction and argument in support of that objection served to put Defendant on notice that Plaintiffs believed the evidence of mitigation was insufficient to warrant the jury determining the issue.  Immediately after the objection was raised by Plaintiffs, Defendant had the opportunity to be heard on the issue.  This exchange achieved one of the purposes of Rule 50.  *See United Int'l Holdings, Inc. v. Wharf Holdings Ltd.*, 210 F.3d 1207, 1229 (10th Cir. 2000) (one of the purposes of Rule 50 is to "ensur[e] an opposing party has sufficient notice of the alleged error").

Because the parties stipulated to the amount of backpay for the relevant period, the Court would have taken the issue of backpay and any offset for mitigation away from the jury if it had declined to include the mitigation instruction in its final jury instructions.  Stated another way, had the Court sustained Plaintiffs' objection to the mitigation of damages jury instruction, the parties would have been in the same position as if Plaintiffs had made a successful Rule 50(a) motion on mitigation.  Under these circumstances, to hold that Plaintiffs are not permitted to bring a Rule 50(b) motion based on their failure to make a formal Rule 50(a) motion would put form over substance as the purposes of Rule 50 were achieved by Plaintiffs' objection to the jury instruction.  Accordingly, the Court finds that Plaintiffs did not waive their right to bring

the instant Motion.  *See Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 288-89

(5th Cir. 2007) (finding that a party's objections to the jury instructions were sufficient to

preserve sufficiency of the evidence for purposes of appeal); *Reeves v. Teuscher*, 881

F.2d 1495, 1498 (9th Cir. 1989) (holding that Rule 50(b) may be satisfied by "an

objection to an instruction for insufficient evidence to submit the issue to the jury.").

Turning to the merits of the Rule 50(b) Motion, Plaintiff EEOC contends that

Defendant did not present sufficient evidence to permit the jury to reduce backpay by

nearly fifty percent.  (ECF No. 152 at 4.)  In response, Defendant points to the evidence

elicited from Mr. Riley that, in August 2009, about a year after he was terminated by

Defendant, he got a job cleaning stadiums at the rate of $7.50 per hour through an

employment agency and that he voluntarily left this employment.  (ECF No. 155 at 3.)

Defendant contends that this was sufficient evidence to permit the jury to reduce the

amount of backpay awarded to Plaintiffs.  (*Id.* at 6.)

Plaintiff EEOC argues that the job cleaning stadiums was not "substantially

comparable" and, therefore, it was not permissible for the jury to reduce the backpay

award based on this employment.  (ECF No. 163 at 1.)  The Court agrees.  Comparable

employment is "employment which affords virtually identical promotional opportunities,

compensation, job responsibilities, working conditions, and status as the position from

which the . . . claimant has been discriminatorily terminated."  *Sellers v. Delgado*

*Comm. College*, 839 F.2d 1132, 1138 (5th Cir. 1988).  The evidence at trial was that

Mr. Riley was a sales associate for Defendant, which was a full-time position with a pay

rate of $7.02 per hour plus benefits and was in a location that was easily walkable from

his home.  The job cleaning stadiums was sporadic, through an employment agency,

-6-

did not entitle him to benefits, and involved an hour commute.  Although the hourly rate

of pay was actually higher in the temporary position cleaning stadiums, the irregularity

of the hours, lack of benefits, and instability of the work makes the overall

compensation not comparable.  Given these significant differences, the Court has little

difficulty concluding that these jobs are not comparable.  *See Todaro v. Siegel Fenchel

& Peddy, P.C.*, 2009 WL 3150408, *4 (E.D.N.Y. Sept. 25, 2009) (failure to accept part-

time work in place of full-time did not cut off eligibility for backpay); *Apple Supermarkets

v. Local 338*, 1999 WL 596273, *4 (S.D.N.Y. Aug. 9, 1999) (part-time work is not

comparable to full-time even if the hourly rate of pay is the same).

 The Tenth Circuit has held that backpay is not cut off when an employee

voluntary terminates employment that is not comparable to the employee's former

position.  *Stone v. D. A.& S. Oil Well Servicing*, 624 F.2d 142, 144 (10th Cir. 1980).

Because mitigation of damages is an affirmative defense, Defendant bore the burden of

proving both: (1) that there were substantially comparable positions which Mr. Riley

could have discovered and for which he was qualified; and (2) that Mr. Riley failed to

use reasonable diligence to find suitable employment.  (ECF No. 148-8.)  The only

evidence presented at trial regarding other potential jobs that Mr. Riley could have

performed during the relevant backpay period was the temporary job cleaning stadiums,

which the Court has found was not comparable to Mr. Riley's job with Defendant.

Therefore, the Court concludes as a matter of law, that Defendant failed to present

sufficient evidence to support the jury's reduction of the backpay damages award.

 Accordingly, Plaintiff EEOC's Motion Pursuant to Federal Rule of Civil Procedure

50(b) for Judgment as a Matter of Law on Defendant's Failure to Mitigate Defense (ECF

No. 152) is GRANTED.  The jury's damages award of $24,000 for backpay is

VACATED.  Because the parties stipulated to the amount of backpay available to

Plaintiffs in the absence of mitigation, the Court finds that there is no need for a new

trial on backpay damages.  *See* Fed. R. Civ. P. 50(c) (if Court grants a renewed motion

for judgment as a matter of law under Rule 50(b), it must then determine whether a new

trial is necessary).  The Clerk shall enter judgment in favor of Plaintiffs in the amount of

$46,422 ($47,060 - $638 = $46,422) for backpay.

### III.  PLAINTIFF'S MOTION FOR EQUITABLE RELIEF

Plaintiff EEOC has also filed a Motion for Equitable Relief.  (ECF No. 154.)  This

Motion originally had two parts: one seeking injunctive relief, and the other addressed to

whether pre-judgment interest was appropriate on the backpay award.  (*Id*.)  However,

after the Motion was filed, the parties were able to reach an agreement on a Consent

Decree, which the Court has entered.  (ECF No. 165.)  The parties agree that the

Consent Decree moots the request for injunctive relief and that the sole issue remaining

is whether to award pre-judgment interest and, if so, at what rate.

The award of pre-judgment interest "rests firmly within the sound discretion of the

trial court."  *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1287 (10th Cir. 2002);

*see also Zuchel v. City and County of Denver*, 997 F.2d 730, 746 (10th Cir. 1993).  "A

two-step analysis governs the determination of such an award."  *Caldwell*, 287 F.3d at

1286.  In exercising its discretion, "[t]he district court must first determine whether the

award of pre-judgment interest will serve to compensate the injured party.  Second,

even if the award of pre-judgment interest is compensatory in nature, the district court

must still determine whether the equities would preclude the award of pre-judgment interest." *Id.*

The Court finds that awarding pre-judgment interest in this case would be compensatory rather than punitive.  As noted by the Tenth Circuit in *Caldwell*, "the rule in this circuit is that pre-judgment interest is generally available 'to compensate the wronged party for being deprived of the monetary value of his loss from the time of the loss to the payment of the judgment.'"  *Id.* (quoting *Anixter v. Home-Stake Prod. Co.*, 977 F.2d 1549, 1554 (10th Cir. 1992).  Awarding pre-judgment interest on Plaintiffs' backpay award would simply put Plaintiffs in the position they would have been but for the wrongful termination.  As such, pre-judgment interest would compensate Plaintiffs in this case.

As to the second step, the Court finds that awarding pre-judgment interest would not be inequitable.  The damages for backpay are simply the money that Mr. Riley would have earned had he not been unlawfully terminated.  The Tenth Circuit has held that "pre-judgment interest should normally be awarded on successful federal claims". *FDIC v. UMIC, Inc.*, 136 F.3d 1375, 1388 (10th Cir. 1998); *see also United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1236 (10th Cir. 2000) (holding that "in the federal context, this Court has adopted a preference, if not a presumption, for pre-judgment interest.").  Nothing in this case takes it outside the norm; therefore, the Court concludes that the equities weigh in favor of granting pre-judgment interest in this case.

Having decided that pre-judgment interest is appropriate, the Court must resolve the dispute over what interest rate should apply.  In its opening brief, Plaintiff EEOC

contends that the Court should award interest at the rate of 8% annually, as set by Colorado Revised Statute § 5-12-102.  (ECF No. 154 at 6.)  Defendant urges the Court to apply the federal post-judgment interest rate set forth in 28 U.S.C. § 961, which is currently 0.5%.  (ECF No. 162 at 5.)  In reply, Plaintiff EEOC continues to advocate for the 8% rate, but also offers the alternative of applying the IRS underpayment rate set forth in 26 U.S.C. § 6621, which is the federal short-term rate plus three percent.  (ECF No. 166.)

As the parties' legal citations show, the Court has significant discretion in setting the pre-judgment interest rate.  In fact, application of all three of the interest rates discussed above has been held to be within the district court's discretion.  *See Allison v. Bank-One Denver*, 289 F.3d 1223, 1244 (10th Cir. 2002) (affirming application of 8% rate from Colo. Rev. Stat. § 5-12-102 in an ERISA case); *Frymire v. Ampex Corp.*, 61 F.3d 757, 773 (10th Cir. 1995) (affirming application of federal post-judgment interest rate); *EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507 (11th Cir. 1987) (affirming application of rate from 26 U.S.C. § 6621).

In its discretion, the Court chooses to apply the rate set forth in 26 U.S.C. § 6621.  The Court finds that this rate best reflects the economic reality of the backpay period (between 2008-10) as interest rates were low but return on investment was high. Had Mr. Riley put the backpay into a savings account, he would likely have achieved accrued interest at a rate close to the federal rate of 0.5%.  However, had he put the backpay money in an investment account, he likely could have obtained a rate of return much closer to the 8% set by Colorado state statute.  The interest rate set forth in 26 U.S.C. § 6621 splits the difference, and ensures that Mr. Riley is fully compensated for

his damages without receiving a windfall.

The Court finds that the equation for calculating the pre-judgment interest set forth in *Reed v. Mineta*, 438 F.3d 1063, 1067 (10th Cir. 2006), and utilized by Plaintiff EEOC in the Motion, is the correct method for calculating pre-judgment interest.  (ECF No. 154 at 5.)  The current short-term federal interest rate is 0.18%.  *See* http://apps.irs.gov/app/picklist/list/federal Rates.html (accessed June 19, 2013).  Adding three percentage points in accordance with 26 U.S.C. § 6621 yields a pre-judgment interest rate of 3.18%.  The Court therefore applies a 3.18% interest rate to the backpay award of $46,422 to arrive at a pre-judgment interest amount of $5,818.[2]

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      Defendant's Unopposed Motion to Reduce Jury Verdict in Accordance with Statutory Damages Cap (ECF No. 153) is GRANTED;

2.      The jury's award of compensatory and punitive damages is REDUCED to $50,000;

3.      Plaintiff EEOC's Motion Pursuant to Federal Rule of Civil Procedure 50(b) for Judgment as a Matter of Law on Defendant's Failure-to-Mitigate Defense (ECF No. 152) is GRANTED;

4.      The jury's backpay award of $24,000 is VACATED and Plaintiffs are AWARDED backpay in the amount of $46,422;

---

[2]  In arriving at this figure, the Court utilized an Excel spreadsheet provided by Plaintiff EEOC which incorporates the *Reed* equation.  (*See* ECF No. 154-2.)  The spreadsheet was manipulated by the Court based on its finding that the interest rate should be  the 3.18% rather than 8%.  (See attached.)

5.     Plaintiff EEOC's Motion for Equitable Relief (ECF No. 154) is DENIED AS MOOT

in so far as it seeks injunctive relief, GRANTED to the extent it seek an award of

pre-judgment interest, and DENIED as to the rate of pre-judgment interest;

6.     Plaintiffs are AWARDED pre-judgment interest at a rate of 3.18% for a total of

$5,818; and

7.     The Clerk shall enter judgment in favor of Plaintiffs in the amount of $102,240,

as well as post-judgment interest at the rate set by 28 U.S.C. § 1961.  Plaintiffs

shall have their costs.

Dated this 20th day of June, 2013.

BY THE COURT:

William J. Martinez
United States District Judge

-12-